IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**GLENDA A. WALLACE**                                                                  **PLAINTIFF**

**VERSUS**                                              **CIVIL ACTION NO. 1:18-cv-256-LG-MTP**

**COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,**
*Nancy A. Berryhill, Acting Commissioner*                                **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff Glenda A. Wallace brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security denying her disability insurance benefits and supplemental security income. Having reviewed the parties' submissions, the record, and the applicable law, the undersigned recommends granting the Commissioner's Motion [20] to Affirm and dismissing this matter.

## PROCEDURAL HISTORY

Plaintiff filed for disability insurance benefits and supplemental security income on November 15, 2014. Admin. R. [6] at 645, 648, 655. After the agency denied Plaintiff's application, a hearing was held before an Administrative Law Judge (ALJ) on May 12, 2017. *Id*. at 493. The ALJ considered Plaintiff's depression, anxiety, panic attacks, borderline obesity, sciatica to the left lower extremity, and cervical spine spondylosis. *Id*. at 55. The ALJ issued an opinion finding that Plaintiff was not disabled and not entitled to benefits. *Id*. at 69. Plaintiff then requested review of the ALJ's opinion, but the Appeals Council denied review. *Id*. at 6-9. This appeal followed.

## ADMINISTRATIVE LAW JUDGE'S DECISION

In his opinion, the ALJ applied the five-step analysis found in 20 C.F.R. § 404.1520(b)-(g)[1] and found that Plaintiff was not disabled according to the Social Security Administration ("SSA") definition. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2013. *Id*. at 55.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: depression, anxiety, panic attacks, borderline obesity, sciatica to the left lower extremity, and cervical spine spondylosis. *Id*. These impairments were found to significantly limit Plaintiff's ability to perform basic work activities. *Id*.

At step three, the ALJ found that Plaintiff's impairments did not meet the requirements of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 56. The ALJ considered Listing 1.04 (disorders of the spine), Listing 11.14 (neuropathy), and Listings 12.04 and 12.06 (mental impairments) and found that the medical records did not demonstrate that these Listings were met. *Id*. at 56-57.

---

[1] This analysis requires the ALJ to make the following determinations:
(1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
(2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
(3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
(4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
(5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920. The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining her burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The ALJ then considered Plaintiff's residual functional capacity ("RFC") and found that Plaintiff could perform light work as defined by 20 C.F.R. § 404.1567(b) "except no more than frequent operation of hand controls with the right, dominant hand.  She can frequently reach overhead with the right upper extremity and frequently reach in all other directions with the right upper extremity.  The [Plaintiff] is limited to simple, routine, and repetitive tasks, occasional interaction with supervisors, occasional interaction with coworkers on a basic and non-personal level, no interaction with the public, solitary work duties not requiring managerial/supervisory responsibilities, and simple work-related decisions." *Id*. at 58.

At step four, the ALJ found that Plaintiff could not perform her past-relevant work as a casino dealer.  *Id*. at 67.  A casino dealer is classified as light, skilled work.  The ALJ found that Plaintiff could not perform this work because she was now limited to "a reduced range of simple work."  *Id*.

At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  *Id*. at 68.  A vocational expert testified at the hearing that an individual with Plaintiff's same characteristics could work as a checker, sampler, or assembler.  *Id*. at 68-69.  The ALJ concluded that Plaintiff was not under a disability through the date of his decision and not entitled to benefits.  *Id*. at 69.

## STANDARD OF REVIEW

This Court will only review the Commissioner's denial of benefits to determine whether "(1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence."  *Newton v. Apfel*, 209 F.3d 448, 452

(5th Cir. 2000). The Commissioner's decision must be affirmed when there is substantial evidence to support the findings. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (internal quotations omitted). Conflicts in evidence are the purview of the Commissioner and are not for the Court to resolve or review de novo. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). "Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (internal quotations and citation omitted).

## ANALYSIS

### Was the RFC determination by the ALJ supported by substantial evidence?

Plaintiff raises a single issue on appeal and argues that the RFC developed by the ALJ was not supported by substantial evidence. Plaintiff submits that the RFC is not supported by substantial evidence because the ALJ assigned little weight to the opinions of consulting psychologist, Dr. Matherne, and treating physician, Dr. Davis. Plaintiff argues that the opinions of these medical professionals demonstrate that "Plaintiff would have marked limitations in her ability to perform the mental requirements of work" and these opinions were supported by the many hospital visits in the record. Pl.'s Br. [16] at 7. The ALJ found, however, that Plaintiff could still perform work under circumstances with limited social interactions.

The ALJ also erred, in Plaintiff's opinion, by assigning great weight to the opinion of Dr. Scallorn, a state agency reviewing physician who did not examine Plaintiff. Plaintiff submits that giving great weight to Dr. Scallorn's opinion was improper because she did not examine Plaintiff, her findings were made before all of Plaintiff's medical records were created, and Dr.

Scallorn's opinion directly contradicted the opinions of Plaintiff's treating physicians. Plaintiff argues that these alleged errors demonstrate that the RFC was not supported by substantial evidence and the record supports her position that her mental impairments should have limited her RFC further.

The Commissioner argues that the ALJ's RFC analysis was supported by substantial evidence in the record. The Commissioner notes that Plaintiff did not cite to any objective medical evidence in the record to support her claim and relies only on the two medical source opinions, which the Commissioner submits were properly given less weight than other opinions.

"An ALJ's residual functional capacity determination is an assessment, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his or her impairments." *Williams v. Berryhill*, 2018 WL 5310655, at *5 (S.D. Miss. Aug. 3, 2018); 20 C.F.R. § 404.1545(a). The RFC assessment is an administrative finding of fact. *Bellanger v. Astrue*, 2012 WL 4210298, at *12 (E.D. La. Aug. 10, 2012). In forming the RFC, the ALJ will consider medical source statements from the claimant's treating sources or other acceptable medical sources. Social Security Ruling 96-8p, 1996 WL 374184 at *2.

"A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (internal quotations and citation omitted). A treating source's opinion is not conclusive and may be rejected when it is not supported by the evidence. *Id.* An ALJ must normally consider the factors listed in 20 C.F.R. § 404.1527(c) before dismissing a treating physician's opinion, but they are not required to analyze the factors if "there is competing first-hand medical evidence contradicting that opinion." *Jones v. Colvin*,

638 Fed. App'x 300, 304 (5th Cir. 2016). Here, the parties disagree whether the ALJ properly considered the opinions from Plaintiff's treating sources and if substantial evidence in the record supports the ALJ's assessment.

First, Dr. Matherne, a clinical psychologist, prepared a report following a psychological consultation with Plaintiff. The report stated that Plaintiff "is moderately impaired in her ability to perform routine, repetitive tasks. She is markedly impaired in her ability to interact with coworkers and supervisors." Admin. R. [7] at 123. The rest of the report included largely normal findings. For example, Plaintiff could perform normal grooming, possessed basic communication and social skills that allowed her to interact with others, and she had no history of in-patient psychiatric treatment. *Id*. at 122.

The ALJ gave little weight to the opinion that Plaintiff was markedly impaired in her ability to interact with others because it was inconsistent with the other examination findings and the other objective medical evidence. *Id*. at 66. The ALJ noted "the other mental status examinations and psychiatric examinations of record similarly show mostly normal findings except sporadically abnormal mood and effect."[2] *Id*.

Second, Dr. Davis, one of Plaintiff's treating physicians, also gave medical opinions regarding Plaintiff's mental state. On September 8, 2016, Dr. Davis filled out a questionnaire and represented that Plaintiff had marked limitations in almost every category relating to social interaction and work performance. *Id*. at 493-94. Dr. Davis noted, however, that these findings were not based on psychological evaluations. *Id*. at 494.

---

[2] Plaintiff was treated at Singing River Hospital several times. On one occasion her mood was recorded as normal. Admin. R. [7] at 480. On another date, she complained of a panic attack but did not have any physical symptoms such as chest pains or shortness of breath, and her heart rate was normal. *Id*. at 272-74. The ALJ also noted that several of these hospital visits for anxiety attacks did not require overnight hospitalization. Admin. R. [6] at 60.

In a separate medical opinion, also dated September 8, 2016, Dr. Davis opined that Plaintiff could not engage in gainful employment. *Id*. at 495. The ALJ gave both of these opinions little weight. Admin. R. [6] at 67. The ALJ found that these opinions were "grossly inconsistent with the objective medical evidence of record" and Plaintiff's mental status findings were mostly normal with occasional abnormalities. *Id*.

Dr. Scallorn, a non-treating medical source, found after reviewing Plaintiff's medical records, that she could have basic, non-personal interactions with coworkers. *Id*. at 566. Dr. Scallorn also opined that Plaintiff could not work with the general public and would need more solitary work duties. *Id*. The ALJ found that this opinion was consistent with the medical records and gave it great weight. *Id*. at 66.[3]

There is substantial medical evidence in the record to support the ALJ's RFC assessment, which gave little weight to the opinions of Dr. Matherne and Dr. Davis regarding Plaintiff's mental and emotional limitations and greater weight to Dr. Scallorn's opinion. On November 19, 2013, Plaintiff noted in a Region XIV Initial Assessment that she was social, had several close friends, and would shop, go to dinner parties, and sometimes attend church. *Id*. at 485. Plaintiff also exhibited normal behavior, appearance, mood, and judgment. *Id*. at 486.

On November 28, 2013, Plaintiff was seen by a physician at Singing River Hospital who noted that she appeared tearful and anxious. Admin. R. [7] at 248. The physician prescribed a small amount of Valium and Klonopin but advised Plaintiff that she had to seek other mental health treatment if she continued to need medication. *Id*.

---

[3] Plaintiff asserts that Dr. Scallorn's opinion should not have been given great weight because it was formed prior to the creation of every relevant medical record. The ALJ, however, based the RFC on the entire record and not this one opinion.

On December 12, 2013, Plaintiff underwent a psychiatric examination at Singing River Hospital and her mood was recorded as stable. *Id.* at 481. On February 14, 2015, Plaintiff appeared Singing River Hospital complaining of a panic attack. *Id.* at 272. She did not have chest pains or shortness of breath and her physical examination was normal— excluding her anxious mood. *Id.* at 272-74. On May 19, 2015, Plaintiff again presented at Singing River Hospital and her psychiatric findings were normal. *Id.* at 301.

On June 2, 2016, Plaintiff was seen by Candace Worsham, DO. *Id.* at 348. Plaintiff presented with normal psychiatric findings, good judgment, and normal mood. *Id.* at 350. Plaintiff was not suicidal, but the physician noted that Plaintiff might benefit from a change in her medication. *Id.* at 351.

Plaintiff was also examined at the VA on August 10, 2016. The records show that Plaintiff presented with a generally normal mental status. *Id.* at 567. Plaintiff was not suicidal, was alert and fully oriented, her speech was normal, and her eye contact was appropriate. *Id.*

These medical findings and notes demonstrate that there is substantial evidence in the record to support the ALJ's RFC assessment. Several exam findings support Dr. Scallorn's opinion that Plaintiff could work in an environment with limited social interaction and that her mental health issues were not as pronounced as Dr. Matherne and Dr. Davis stated. The ALJ acknowledged that Plaintiff had mental impairments and difficulty dealing with others, and accordingly limited her to occasional, non-personal interactions with co-workers and no interaction with the public. This Court should not reweigh the evidence in the record, and because there is substantial evidence in the record to support the ALJ's RFC assessment, the undersigned recommends affirming the Commissioner's decision.

## RECOMMENDATION

For the reasons set forth above, the undersigned recommends GRANTING Motion [20] to Affirm the Decision of the Commissioner and dismissing this matter with prejudice.

## RIGHT TO OBJECT

In accordance with the rule and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge, and the opposing party. The district judge at the time may accept, reject, or modify in whole or in part, the recommendations of the magistrate judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 7th day of November, 2019

s/ Michael T. Parker<br>
United States Magistrate Judge